Good morning, Your Honors. John Price appearing on behalf of the appellant. Before the Court this morning are, as a matter involving two fundamental policy issues. The narrow construction of exceptions to discharge under the Bankruptcy Code and questions of the construction of inferences in a summary judgment determination. All of these are interpreted under the de novo review standard. The starting point here is a State court judgment. Liability, Mr. Samuel's liability, was predicated on not that he was a fiduciary, but on oral agreement and waiver. That's it. The starting point. The trial court, the State court proceedings, they didn't make a determination as to the interrelationship of the parties and the fiduciary question? The first time that the State court used the word fiduciary was after the judgment was entered and said, Mr. Samuels is a fiduciary because he owns the corporation. The corporation is in a partnership with the other party. Since he owns the corporation, he's responsible for all the corporate obligations. There was no determination the corporation was insolvent. There was no piercing of corporate bail. There was no alter ego theory. It was merely that he owned the corporation, therefore, he's responsible. He's just as responsible as the corporation. That was not appealed, though, right? There was no appeal from that order. So isn't there a verity to that judgment? Sorry? A verity. Isn't that doesn't that establish those facts then? I mean, if that's the judgment from the State court, you don't appeal it, that's the story we're stuck with. The determination that the State court made about Samuels being a fiduciary was not made as part of the judgment. It was made months after the judgment, and it was not incorporated into the judgment. Was it did you have post-judgment proceedings? The judgment is a document entered at the end of the proceedings. There was a judgment entered, and there was essentially a motion for reconsideration of this bench trial. So the trial court still had jurisdiction over the case, and its remarks and statements then apply now, right? The court could have incorporated that analysis into its judgment. It did not. It said, I signed off on that months ago. There's a specific provision under the Code of Civil Procedure for you to incorporate such determinations into a judgment. It simply was not done here. And, in fact, the commentary by the State court that Mr. Samuels is a fiduciary is not part of the judgment. It is, from that standpoint, purely academic. Then by what? No, it's the view of the trial court, isn't it? It's the expressed view of the trial court. Not as part of the judgment, Your Honor. No. It's the expressed view of the trial judge, right? It is the view of the trial court judge, but it was not incorporated into the judgment. It is the judgment that is the basis of the non-dischargeability determination. Well, whatever the judge said, whatever was going on in her head, the fact remains she held him jointly and severally liable. If the determination by the State court has a vitality in the judgment that he was a fiduciary, you still have to then go through the 523 analysis, which is, was that determination satisfactory for 523 purposes? And I would submit that it is definitely not, because in order to be a fiduciary under 523, there must be an expressive statutory trust. There is no expressive statutory trust here. The bankruptcy court relied heavily on the Ragsdale case. The Ragsdale case actually supports our position because the Ragsdale case involves a partnership. Mr. Samuels was not a partner. The bankruptcy court acknowledged that he was not a partner. The bankruptcy court also acknowledged there was no expressive statutory trust. Therefore, even if the court were to assume that the State court had, as part of its judgment, determined that Mr. Samuels was, in fact, a fiduciary, that still does not satisfy the analysis under 523A4. There must be an expressive statutory trust. There simply is no such trust here. And therefore, this is reversible error because Mr. Samuels is not a fiduciary under the Federal statutory scheme. And there's absolutely no basis, there's absolutely no other basis that the bankruptcy court considered to deny him a discharge. I'd like to reserve the balance of my time. You bet. Thank you. May it please the Court. Good morning. I'm Scott Ovitz. I represent CMW and Nicholas Investment, the balance. Under State law, do you have to have a trust to have a fiduciary and only a trust? No. In fact, the Leff v. Guttner case says that partners are, in fact, trustees of partnership property for the other partners. And that's the reason Ragsdale, a decision by this Court in 1986, has vitality in California. Yeah, but he wasn't a partner. Well, that becomes the second tier issue, if I may address that. What Ragsdale said was very clear. Between partners, if you're applying, yes, you need the expressive or technical trust. If you apply California law, you look to Leff v. Guttner. The partners have a duty to account to the other partners of the partnership. That creates the trustee relationship. They are trustees as a matter of California law. Then the question becomes, can Mr. Samuels, by virtue of a series of intervening companies, somehow insulate his duties? First, we have to look at what the State court said. The State court, contrary to my counsel, I respect and know very much. On page 86 of the record indicates through a series of mergers and relationships that Ron Samuels was the person who was responsible. He was the human being who collected the money from this film, Iron Eagle, classic 1986 film with Luke Gossett. He is the person who converted the money. He's the person who knew that CMW and Nicholas Investment were partners, in fact, had paid them some money up until a period of time and then stopped doing that. Well, the actual partnership was, the actual partner was Black Stallion Productions, Inc., right? Yes. And Samuels was the sole stockholder of Black Stallion Productions, Inc.? Yes, Your Honor. Did the judge ever pierce the corporate veil and find that this was the alter ego of Samuels? Not alter ego, but did find that he had the fiduciary duty. The text in the record is at page 85 and 86. This does arrive from the September 11th proceedings that Mr. Kreiss referred to earlier. Quote, plaintiffs argue that joint venture was between Black Stallion. The issue was argued down below. Black Stallion was at all times owned by Ron Samuels. On November 13th, Black Stallion was merged into First Films International, also owned by Samuels. First Film was dissolved in January 26th since liabilities were assumed by Ron Samuels Entertainment, each of these a Ron Samuels company. Also owned by Ron Samuels and operated as a loan out company. Thus, and this is I'm reading from page 86 starting at line 7, this is the state court judge. The fiduciary duties that were created by the original joint venture continue to be owed through the series of mergers and dissolutions and Samuels as the owner and financial beneficiary of the proceeds owed a fiduciary duty. I think the answer is clear that he does. The one case that I found in preparing for oral argument that discusses this at some length was Abrams versus Seapalms, a bankruptcy appellate panel decision from this period of time, 229 BR 784, 229 Bankruptcy Reporter 784, a 1999 decision. And there the bankruptcy appellate panel goes through Ragsdale, discusses this second tier issue and says, well you really shouldn't allow this to be the case because if you do, quote, holding that second tier general partners are not fiduciaries, as Mr. Christ would argue on behalf of Mr. Samuels, of first tier limited partnerships would invite attempts to evade partnership duties and liability. A general partner to be could add a second partnership layer consisting of himself or herself and a phantom limited partner simply to insulate himself or herself from a potential non-dischargeability determination. In Seapalms, the court focused on control, said if you are a person, regardless of the degree, the insulation of a corporation in between, that as a person in control, your duty continues to be there. And leaves open the question about what happens to some grandmother in Illinois who doesn't know anything about a particular partnership who might be, let's say, a shareholder of an intervening corporation. Mr. Samuels was the man, in fact, he was the man who started the company, Falcon's Flight, that made the film and assigned the rights. He was the man who was there signing on the original agreement that's attached to the record with U.S. Equity, U.S. Equity put in the capital. And indeed, the state court didn't let it go when Mr. Christ says there was no finding that there was a fiduciary relationship. But that's not so, because in the judgment itself, which is document 5, starting at page 75, on page 76, the court holds, and I'm reading from line 8, on its causes of action for money had and received, breach of fiduciary duty and conversion, plaintiff Nicholas, investment shall have judgment against defendants Ron Samuels and then the series of companies. Same thing beginning on line 14, shall have judgment against Ron Samuels and these various other entities. On September 11th, when the issue was raised before the court, and they argued that there should be, Ron Samuels was not the partner, he shouldn't have the duty. The court listened, said, I'm sorry, my tentative ruling stands. The judgment was not changed in any way. And that makes it clear that the state court judge was thinking that he had the duty because of that degree of control. There's also, in the record, a real issue about Mr. Samuels' credibility. The court said on several things, he and his mother just didn't seem to be telling the truth. So, in giving credence to the decisions of the court, I think that is absolutely important. There's really no question about collateral estoppel. We're not trying to conflate or deal with Rooker Feldman or any of that other funny stuff that this court has told us we might be getting confused on at this end. This is identical issues. Who were the partners? Who collected the money? It was Ron Samuels. What happened to the money? Ron Samuels got it, and Ron Samuels collected it. In page 82 of the record, it talks about he was the person who had the benefit of the monies received from Iron Eagle. So, in short, under 523A4, the state court judgment should be non-dischargeable because we have a defalcation. That's an innocent or an intentional failure to provide the monies that you're required to provide as a partner. We had a fiduciary capacity because the technical trust is established by California law. We have a partner. We have Ron Samuels, who's not insulated by the second tier avenue, and therefore, the judgment of the bankruptcy court and district court should stand. Thank you, Mr. Govitz. Your Honor, your Honor's inquired if there was a determination by the state court that Mr. Samuels was a partner. There was no such determination. No such determination was made by the bankruptcy court. To the contrary, the bankruptcy court conceded that he was not a partner, and this was not an insolvent corporation that he owned. The state court did not determine the corporation was insolvent, therefore, he's liable. The commentary after, and there was no tentative ruling here. There was a judgment and there was a motion for reconsideration. And the commentary about Samuels as a fiduciary, again, was he owned the corporation. The corporation was itself in a partnership. Therefore, Samuel's personal liability corresponds to the corporate liability. Is the state court judgment or trial court proceeding race judicata's between the parties? It is arguably race judicata between the parties as to what was decided. But it is certainly. As to the amount of the judgment, right, and interest. It is arguably for purposes of fixing a claim, but the question remains. Did the state court fix the relationship? I would submit, Your Honor, that the state court did not fix the relationship because it did not determine that Samuels was a fiduciary in principles that are consistent with Section 543. That's a little different. Were they partners? No. And the fact the state court did not find him as a partner. Were they in a corporate or business structure having a relationship? The partnership existed between the corporation Samuels owned and the limited partnership on the other side. Samuels was responsible for all the corporate activity, right? Samuels owned the corporation, but there was no determination that. Was there a bookkeeper that stole the money, or was it Samuels? There was no determination of money being stolen, Your Honor, to the best of my knowledge, by the state court. Did the money come up short because some bookkeeper gemated it, or was it Samuels' fault? If you look at the state court judgment, the claims that were asserted were a failure to account, there was a conversion claim, no determination of malice, but the fundamental question is this again. The state court did not determine he was a partner. Its analysis that he was a fiduciary flies in the face of Section 523. His corporation was not insolvent. There was no attempt made by the state court to pierce the corporate veil and say, Samuels, you are personally liable for what the corporation did here, or that you're the corporation's alter ego. That was not done in the state court. There was also some commentary about Samuels' credibility. That doesn't enter into the analysis below. In fact, the bankruptcy court found Samuels to be quite credible. As far as defalcation, there was no commentary before the state court on defalcation. So the court is left with a fundamental consideration, which is as follows. Did what the state court achieved here fly in the face of Section 523A4? We submit that it did. You cannot make a determination post-judgment that somebody is a fiduciary merely because he owns a corporation. If that's a determination, you stand corporate law on its head. And it flies in the face of Ragsdale, which says you have to have an express or a statutory trust. Well, then the state court judge never should have granted a judgment against Samuels jointly and severally with the corporation. Be that as it may, Your Honor. But that's what she did. But the issue is, whether is what she did non-dischargeable? And that is a separate analysis under federal law and requires an interpretation of the federal statute. Let's get some kind of an agreement on the basic facts before we apply the law. I think that's what the judge's question's about. I'm sorry. It's a joint and several liability, right? Well, the- He has a debt to somebody, doesn't he, because of that litigation? The state court determined that his obligations were coterminous with his corporation merely because he owned a corporation. Not because he did it, not because the corporate veil should be pierced or there was an alter ego. Does that determination satisfy the analysis under Section 523? We submit that it does not satisfy that analysis because there was no express or statutory trust. Samuels was not a partner. He is not a partner in this case. Who else had any control of the corporation other than Samuels? Was that clear in the state court proceedings? It is undoubtedly the case that Samuels had control of the corporation, but control of the corporation does not render him liable for the corporate obligations absent the determination that the corporation would insolve him. If he was the sole person involved in the corporation, did he have a duty to account? The issue, the issue- Did he have a duty to account, yes or no? Well, the corporation certainly had a duty to account. And he was the only person in the corporation that could do the accounting, right? Was there somebody else involved? There is nothing in the state court judgment that addresses that issue, Your Honor. But the liability of Mr. Samuels was, again, based merely on his ownership of the corporation. Not that we are going to hold that the corporation and you are one and the same, or that the corporate bail should be pierced. And this is, I would submit, insufficient under Section 523. And lastly, you have the fact that the bankruptcy court construed all the inferences against Mr. Samuels on a summary judgment motion, which is improper. Thank you. Mr. Vovitz, thank you as well. The case argued is submitted.
judges: Beezer, Hall, Silverman